Andrew L. Chang (SBN 222309)
achang@shb.com
Jason M. Richardson (SBN250916)
jmrichardson@shb.com
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2600
San Francisco, California 94104
Tel:  415.544.1900
Fax:  415.391.0281

Attorneys for Defendants
CARRIAGE CEMETERY SERVICES OF
CALIFORNIA, INC.; CARRIAGE FUNERAL
SERVICES OF CALIFORNIA, INC.;
CARRIAGE SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOSHIRA BARAJAS, individually and on behalf of others similarly situated; HENRY GRANT, individually and on behalf of others similarly situated; NACHAE WILLIAMS, individually and on behalf of others similarly situated; and BURIEL DENISE WILLIAMS DAVIS, individually and on behalf of others similarly situated,<br><br>                     Plaintiffs,<br><br>                     v.<br><br>CARRIAGE CEMETERY SERVICES OF CALIFORNIA, INC.;  CARRIAGE FUNERAL SERVICES OF CALIFORNIA, INC.; CARRIAGE SERVICES, INC., and DOES 1-50, inclusive,<br><br>                     Defendants. | Case No. 4:19-cv-02035<br><br>**DEFENDANTS CARRIAGE SERVICES, INC., CARRIAGE CEMETERY SERVICES OF CALIFORNIA, INC., AND CARRIAGE FUNERAL SERVICES OF CALIFORNIA, INC.'S NOTICE OF REMOVAL**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendants Carriage Services, Inc. ("CSI"), Carriage Cemetery Services of California, Inc. ("Carriage Cemetery"), and Carriage Funeral Services of California, Inc. ("Carriage Funeral") (collectively "Removing Defendants") hereby remove the above-captioned action from the Superior Court of the State of California in and for the County of Alameda to the United States District Court for the Northern District of California.  In support of their Notice of Removal, Removing Defendants state as follows:

1.      On March 8, 2019, Plaintiffs Yoshira Barajas, Nachae Williams, and Henry Grant[1] commenced this action in the Superior Court of the State of California in and for the County of Alameda by filing a "Class and Representative Complaint for Damages," Alameda County Case No. RG19010306 ("Complaint").  The Complaint named Removing Defendants as "Defendants."[2]

2.      True and correct copies of the Summons and Complaint, Civil Case Cover Sheet, and Notice of Complex Determination Hearing and Case Management Conference, served on the Removing Defendants on March 20, 2019, are attached hereto as **Exhibit A**.  Defendant CSI was not served with the Complaint.

3.      On April 10, 2019, a First Amended Complaint ("FAC") was filed by Plaintiffs Yoshira Barajas, Nachae Williams, Henry Grant, and Buriel Denise Williams Davis in Alameda County Superior Court.  Among other things, the complaint identified an additional plaintiff:  Buriel Denise Williams Davis.  The FAC again named Removing Defendants.[3]

4.      On April 11, 2019, Plaintiffs served the FAC on Defendant Carriage Cemetery.  A true and correct copy of the FAC is attached hereto as **Exhibit B**.  Defendants CSI and Carriage Funeral were not served with the FAC.

5.      Together, Exhibits A and B constitute "all process, pleadings, and orders served upon" Removing Defendants.  *See* 28 U.S.C. § 1446(a).

### INTRADISTRICT ASSIGNMENT

6.      The Complaint and FAC allege that the harm on which this action is based occurred "in Contra Costa County, Alameda County, as well as other surrounding counties."   While Removing Defendants dispute whether and where any harm was caused, for purposes of intradistrict assignment under Civil L.R. 3-2(c)-(d), and 3-5(b), Removing Defendants submit assignment should be to the San Francisco Division or the Oakland Division.  Removing Defendants further submit that assignment to the Oakland Division is appropriate based on a related case currently assigned to the

---

[1] Mr. Grant was not listed on the caption page of the Complaint, but was identified in the text as a Plaintiff.  *See, e.g.,* Complaint (Ex. A) at ¶¶1, 9.

[2] Similar to Mr. Grant, CSI was not listed on the caption page of the Complaint but was identified in the text as a Defendant.  *See* Complaint (Ex. A) at ¶1.

[3] Again, CSI was not listed on the caption page of the FAC, but was identified in the text as a Defendant.  *See* FAC (Ex. B), at ¶1.

2

Honorable Jeffrey S. White in that division:  *Uschold, et al. v. Carriage Services, Inc.*, N.D. Cal. Case No. 4:17-cv-04424-JSW (EDL) (the "*Uschold* Action").

**FACTUAL BACKGROUND**

7.     The Complaint and the FAC contain vague, ambiguous, and often conflicting allegations both internally and between the two pleadings.

8.     In the Complaint, Plaintiffs' alleged class is described as "All former and current employees ("Class Members") employed by Defendants within the State of California within four years of the filing of this Complaint until the entry of judgment after trial" as well as identifying five proposed subclasses.  Complaint (Ex. A) at ¶27.  The FAC initially describes the putative class similarly (FAC (Ex. B) at ¶1), but also describes the putative class as "All former and current employees ("Class Members") employed by Defendants within the State of California within four years of the filing of this Complaint until the entry of judgment after trial, that were denied the compensation guaranteed under the California Labor Code, and/or subjected to unlawful treatment with respect to the terms of compensation set forth in their offer letters," as well as identifying six proposed subclasses.  FAC (Ex. B) at ¶37.

9.     The alleged size of Plaintiffs' alleged class and subclasses do not appear to have changed based on the revised class definition.  Both the Complaint and the FAC allege that the class contains between 50 and 250 people and each subclass contains "not less than 5 people."  *See* Complaint (Ex. A) at ¶26, ¶28; FAC (Ex. B) at ¶36, ¶38.

10.     Plaintiffs incorrectly allege that the three defendants are "joint employers" of Plaintiffs under the California Labor Code.  CSI, Carriage Cemetery, and Carriage Funeral are distinct, but affiliated, legal entities.  As Plaintiffs' counsel is aware from proceedings in the related *Uschold* Action, the Carriage Cemetery and Carriage Funeral have not and do not employ any persons in California.  Declaration of Christine Ngo in *Uschold* Action ("Ngo Decl."), attached as Ex. 1 to Declaration of Andrew Chang ("Chang Decl."), ¶¶ 11-12.  Counsel for CSI contacted Plaintiffs' counsel and requested Plaintiffs dismiss Carriage Cemetery and Carriage Funeral voluntarily, as occurred in the related *Uschold* Action.  Plaintiffs' counsel refused, stating a belief that Carriage Cemetery and Carriage Funeral are "joint employers under California law and properly

3

1    named."  When asked to provide the basis for that assertion, Plaintiffs' counsel refused.   Chang

2    Decl., Ex. 2.

3        11.    Based on Plaintiffs' allegations regarding their employment and class size, and as

4    discussed below, Removing Defendants allege that Plaintiffs' Complaint and FAC describe a class

5    of employees of CSI only, and Plaintiffs fraudulently joined Carriage Cemetery and Carriage

6    Funeral in this action.

7        12.    In the FAC, Plaintiffs assert seven causes of action for:  (1) failure to pay minimum

8    wages in violation of Cal. Labor Code § 1197; (2) failure to pay premium wages in violation of Cal.

9    Labor Code § 510; (3) breach of contract; (4) fraud – intentional misrepresentation; (5) fraud – false

10   promise; (6) violation of Cal. Labor Code § 2751 (PAGA penalties); and (7) violation of Cal. Bus. &

11   Prof. Code § 17200 *et seq*.   Each of these claims is premised on allegations that Removing

12   Defendants failed to pay Plaintiffs for time they worked, failed to pay Plaintiffs minimum wage and

13   overtime, failed to pay wages and commissions required under alleged employment and commission

14   contracts, failed to provide a signed copy of any commissions agreement to Plaintiffs, and made

15   false promises and representations regarding their compensation.  *See* FAC (Ex. B)

16       13.    As demonstrated below, this Court has jurisdiction over Plaintiffs' action, and it is

17   properly removed to this Court.

18                          **BASIS OF FEDERAL JURISDICTION**

19       14.    This Court has subject matter jurisdiction pursuant to both 28 U.S.C. § 1332(a)

20   (diversity jurisdiction) and 28 U.S.C. § 1332(d) (the Class Action Fairness Statute or CAFA).  As to

21   diversity jurisdiction, the case is removable under 28 U.S.C. §§ 1332(a) and 1441 because this is a

22   civil action in which the matter in controversy as to at least one Plaintiff exceeds the sum or value of

23   $75,000, exclusive of interest and costs, and is between citizens of different States.  *See Exxon Mobil*

24   *Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558–59 (2005).  Removal under 28 U.S.C. § 1441(b)

25   is appropriate in this matter since complete diversity of citizenship exists between Plaintiffs and the

26   non-fraudulently-joined defendant CSI, which is not a citizen of California, the state in which this

27   action was brought.  As to CAFA jurisdiction, the case is independently removable under 28 U.S.C.

28

§ 1453 on the basis of minimal diversity among the parties, more than $5 million at issue, and a putative class of more than 100 members.

**CITIZENSHIP OF THE PARTIES**

15.     Complete diversity of citizenship exists between Plaintiffs and Defendant CSI.

16.     Plaintiffs are natural persons who allege that they reside and/or performed their job duties while allegedly employed by Defendants in Alameda or Contra Costa Counties in California. *See* Complaint (Ex. A) at ¶¶8-10; FAC (Ex. B) at ¶¶8-11.  Similarly, Plaintiffs' addresses throughout the time of their engagement with CSI and their last-known addresses, as provided by Plaintiffs, were all located in California.  Upon that basis, Removing Defendants allege that Plaintiffs are citizens of California for purposes of determining diversity of citizenship.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (stating citizenship is determined by domicile, which is person's "permanent home, where she resides with the intention to remain or to which she intends to return"); *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (factors to determine domicile include residence and place of employment or business).

17.     Defendant CSI is a citizen of both Texas, the state of its principal place of business, and Delaware, its state of incorporation.

**FRAUDULENT JOINDER OF CARRIAGE CEMETERY AND CARRIAGE FUNERAL**

18.     As demonstrated herein, Carriage Cemetery and Carriage Funeral, which are both citizens of California and Texas, are fraudulently joined defendants, whose citizenship should be ignored for purposes of determining diversity jurisdiction.

19.     There are two ways to establish fraudulent joinder.  First, a party can demonstrate "actual fraud in the pleading of jurisdictional facts."  *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018).  Second, fraudulent joinder can be established by showing plaintiff's inability to establish a cause of action against the non-diverse party in state court.  *Id.* ("Fraudulent joinder is established the second way if a defendant shows that an 'individual[] joined in the action cannot be liable on any theory.'").  While the complaint is a helpful guide, "the party seeking removal is entitled to present additional facts that demonstrate that a defendant has been

NOTICE OF REMOVAL TO FEDERAL COURT
CASE NO. 4:19-cv-02035

1   fraudulently joined." *Id.* at 549 (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir.

2   1998)).  "[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering

3   summary judgment-type evidence such as affidavits and deposition testimony." *OpenGov, Inc. v.*

4   *GTY Technology Holdings Inc.* No. 18-cv-07198-JSC, 2019 WL 978769, at *6 (N.D. Cal. Feb. 28,

5   2019) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001)).

6          20.    Plaintiffs conclusorily allege that Removing Defendants are "joint employers," but

7   allege no specific facts to support any joint-employment or conduct by Carriage Cemetery or

8   Carriage Funeral as to Plaintiffs or the putative class.  To the contrary, Carriage Cemetery and

9   Carriage Funeral have never engaged or employed Plaintiffs, nor did they employ ***any*** employees in

10  California during the alleged class period of March 8, 2015 to the present.

11         21.    In the related *Uschold* Action, the same Plaintiffs' counsel in this action similarly

12  named Carriage Cemetery and Carriage Funeral in the initial complaint.  Plaintiffs' counsel in

13  *Uschold* stipulated that Carriage Cemetery and Carriage Funeral had been incorrectly named and

14  that the correct Defendant and employer was CSI.  Given that history, Removing Defendants'

15  counsel here requested Plaintiffs voluntarily dismiss Carriage Cemetery and Carriage Funeral in this

16  action.  Chang Decl., Ex. 2..  Plaintiffs' counsel refused to dismiss Carriage Cemetery and Carriage

17  Funeral and refused to provide any basis for the assertion that Carriage Cemetery and Carriage

18  Funeral were "joint employers." *Id.*

19         22.    Plaintiffs have not specifically alleged, and cannot specifically allege any conduct or

20  facts that would support any employment relationship between Plaintiffs and Carriage Cemetery or

21  Carriage Funeral.  Plaintiffs have also refused to identify any basis for the conclusory allegation that

22  such an employment relationship existed.  For that reason, Plaintiffs cannot allege the basis for

23  liability of Carriage Cemetery and Carriage Funeral for Plaintiffs' claims.

24         **CLASS SIZE**

25         23.    CAFA's first requirement, that the proposed class contain at least 100 members, 28

26  U.S.C. § 1332(d)(5), is satisfied here.  Plaintiffs allege that they seek to represent a class of persons

27  who were employed by Removing Defendants in California "from the date four years prior to the

28

6

filing date of the original Complaint through the entry of judgment." Complaint (Ex. A) at ¶ 1; FAC (Ex. B) at ¶1.

24.     Based on Removing Defendants' understanding that Plaintiffs are alleging a class of any persons employed by Defendant CSI from March 8, 2015 to the present, the proposed class would contain over 1,000 members. Even if Plaintiffs intended to limit their proposed class to persons in sales positions based on any other allegations, the proposed class would contain over 450 members.

### MINIMAL DIVERSITY OF CITIZENSHIP

25.     CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2), is also satisfied here. First, minimal diversity of citizenship necessarily exists because complete diversity of citizenship exists between Plaintiffs and CSI.

26.     Further, minimal diversity of citizenship is also satisfied looking only at Carriage Cemetery and Carriage Funeral because Plaintiffs do not actually limit their class and sub-class definitions to the states in which those defendants are citizens. Rather than limit their class and sub-class definitions to California or Texas citizens, Plaintiffs have defined the class to include those employed by Defendants "in California … from the date four years prior to the filing of the original Complaint through entry of judgment." Complaint (Ex. A) at ¶ 1; FAC (Ex. B) at ¶1. Thus, given the size and time period of the putative employee class at issue, it is substantially certain that at least one putative class member is a citizen of a state other than California.

27.     For example, the last known addresses of persons employed by CSI in California during the class period include a number of different states (*e.g.,* Kentucky, Nevada, and Arizona). Ngo Decl., attached as Ex. 1 to Chang Decl., ¶¶4-7. Upon that basis, Removing Defendants allege that some putative class members are citizens of states different from any defendant, including CSI.

28.     The fact that Plaintiffs' class and sub-class definitions include individuals who are citizens of multiple states is important because diversity of citizenship exists for purposes of CAFA so long as "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). All three Removing Defendants are citizens of Texas. Carriage Cemetery

7

1    and Carriage Funeral are also both citizens of California.  CSI is also a citizen of Delaware.

2    Therefore, any member of the putative class who is not a citizen of Texas is necessarily diverse from

3    at least one defendant.

4    **AMOUNT IN CONTROVERSY**

5        29.    The amount in controversy requirements – either $75,000 as to any named plaintiff

6    for diversity jurisdiction or an aggregate amount in controversy exceeding $5 million for CAFA

7    jurisdiction, exclusive of interest and costs – are satisfied as well.  28 U.S.C. § 1332(a), (d)(2).  To

8    remove the case, a defendant need not prove that individual or class recovery *will* exceed those

9    figures, only that it ***could***.  *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014).  A

10   defendant's notice of removal "need include only a plausible allegation that the amount in

11   controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v.*

12   *Owens*, 135 S. Ct. 547, 554 (2014).

13       30.    Although Removing Defendants dispute liability and damages, it is evident that

14   Plaintiffs purport to allege claims for themselves and the proposed class of over a thousand members

15   for monetary relief that, if granted, would exceed CAFA's $5 million requirement in the aggregate

16   and over $75,000 as to at least one named plaintiff, Yoshira Barajas.

17       31.    Plaintiffs pray for the following relief:  "all wages due and owing; … statutory

18   liquidated damages; … statutory waiting time penalties; …restitution of unpaid costs and expenses

19   pursuant to Business & Professions Code Sections 17200 *et seq.*; … interest at the maximum legal

20   rate; … attorney's fees authorized by statute; [and] … PAGA penalties."[4]  FAC (Ex. B), at p. 17.

21   Analysis of allegations relating only to a portion of the claims relating to minimum-wage and

22   overtime establishes the amount in controversy requirement is met.

23       32.    Plaintiffs allege that Ms. Barajas resigned from CSI "[i]n mid-2018 … after being

24   unpaid for over a year and half [*sic*] despite working 70-80 hours per week."  *Id.* at ¶22.

25   Conservatively calculating Ms. Barajas' claim for minimum wage and overtime solely for that

26

27

28   _____

[4] For purposes of calculating the amount-in-controversy for removal, Defendants do not include purported PAGA penalties.

8

alleged 18-month period at the California state minimum wage of $10.50 for 2017 and $11.00 in 2018, yields relief sought of $110,230.  This amount in controversy was calculated as follows:

- In 2017, minimum wage for the first 40 hours per week equals $21,840 (52 weeks x $10.50 x 40 hours).  Incorporating liquidated damages, the alleged minimum-wage damage becomes $43,680.  For the same 2017 period, Ms. Barajas' allegedly unpaid overtime wage would amount to $28,655 (52 weeks x (($10.50 x 1.5) x 35 hours)).

- For the six-month period in 2018, at minimum wage for the first 40 hours per week equals $11,440 (26 weeks x $11.00 x 40 hours).  Incorporating liquidated damages, the alleged minimum-wage damage increases to $22,880.  For the same six-month period in 2018, Ms. Barajas' allegedly unpaid overtime wage would amount to $15,015 (26 weeks x ($11.00 x 1.5) x 35 hours)).

33.     Plaintiffs further allege that "[e]ach named Plaintiffs [*sic*], and potential class member, experienced the same types of factual circumstances relating to their job duties and compensation."   FAC (Ex. B), ¶23.   While Removing Defendants dispute such allegations, multiplying Ms. Barajas' minimum-wage and overtime claims by Plaintiffs' estimated class of 50-250 people equals an amount in controversy for those claims alone of between $5,511,500 and $27,557,500.  And as alleged, the putative class actually includes between 450 and more than 1,000 people.

34.     Notwithstanding Plaintiffs' allegations that every named plaintiff and potential class member "experienced the same types of factual circumstances relating to their job duties and compensation," Plaintiffs' allegations as to Ms. Williams-Davis appear to indicate otherwise.  To address this inconsistency, Removing Defendants provide an alternative basis to support an aggregate amount in controversy exceeding $5,000,000, as follows.

35.     Plaintiffs allege Ms. Williams-Davis worked between 45-58 hours per week, that she was never paid overtime, and worked "for up to six months without compensation."  *Id.* at ¶¶25-28.  During the class period of March 8, 2015 through the present, Plaintiffs allege Ms. Williams-Davis worked for over 75 weeks, from March 8, 2015 (the beginning of the class period) through "in or around September 2016."  *Id.* at ¶¶25-28.  Based on these allegations, conservative calculation of the

relief sought by Ms. Williams-Davis is $14,317.50, at a minimum.  This amount is calculated as follows:

- At a minimum wage of $9.00 an hour (the lowest during the class period in 2015), 25 weeks of compensation at 40 hours per week equals $9,000 (40 hours x $9.00 x 25).

- At an alleged minimum of 5 hours of overtime per week at a rate of $13.50 ($9.00 x 1.5) in 2015 and $15.00 ($10.00 x 1.5) in 2016, Ms. Williams-Davis' overtime claim equals $5,317.50 (for 2015, 5 hours x $13.50 x 41 weeks = $2,767.50; for 2016, 5 hours x $15.00 x 34 weeks = $2,550).

36.     Based on Plaintiffs' allegation that every potential class member "experienced the same types of factual circumstances relating to their job duties and compensation" as the named Plaintiffs, the smallest amount of relief expressly alleged by any named Plaintiff is $14,317.50, and because the scope of the putative class alleged includes between 450 and over 1,000 people, Removing Defendants allege that the aggregate amount in controversy for CAFA purposes is at least $6,442,875 ($14,317.50 x 450).

37.     Considering the claims at issue, the relief sought, and the number of alleged class members, the aggregate amount placed in controversy by the FAC far exceeds the $5 million requirement, exclusive of interests and costs.

**NO EXCEPTION TO CAFA JURISDICTION APPLIES**

38.     Removing Defendants have met their burden of establishing the satisfaction of CAFA's initial jurisdictional requirements.   The burden shifts to Plaintiffs to establish the applicability of any express CAFA jurisdictional exception.  *Allen v. Boeing Co.*, 784 F.3d 625, 628 (9th Cir. 2015).  Any doubt as to the applicability of a CAFA exception is to be resolved in favor of removal.  *See Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 337-38 (5th Cir. 2016); *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265 (8th Cir. 2015).  The Ninth Circuit instructs that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  *Bridgewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 929 (9th Cir. 2015) (citations omitted).  Any effort by Plaintiffs to establish that this case qualifies for an exception to CAFA jurisdiction will fail.

**PROCEDURAL COMPLIANCE**

39.     Plaintiffs filed this putative class action on March 8, 2019 in the Superior Court of the State of California for the County of Alameda.

40.     On March 20, 2019, Plaintiffs personally served the Summons, Complaint, and the other materials included in Exhibit A on Defendants Carriage Cemetery Services and Cemetery Funeral Services.

41.     To the extent necessary, all properly joined and served defendants have joined in and consent to removal of the action.

42.     The United States District Court for the Northern District of California is the proper venue for removal under 28 U.S.C. Section 1441(a) because it is "the district and division embracing the place where such action is pending," namely, Alameda County, California.

43.     This removal is timely.  Removing Defendants file this Notice of Removal within 30 days of March 20, 2019 as required by the removal statute. *See* 28 U.S.C. § 1446(b)(2)(B) ("Each defendant shall have 30 days after the receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal.").

44.     Promptly after filing this Notice of Removal, Removing Defendants will file a Notice of Filing of Notice of Removal, along with a copy of the Notice of Removal, with the Clerk of the Superior Court of California, County of Alameda and will serve written notice of the same on counsel for Plaintiffs, all in accordance with 28 U.S.C. § 1446(a) & (d).

45.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Civil L.R. 3-6, Removing Defendants hereby request trial by jury.

///

///

///

11

1         Accordingly, Removing Defendants hereby remove this action to the United States District

2   Court for the Northern District of California.

3

4   Dated: April 16, 2019                        Respectfully submitted,
                                             SHOOK, HARDY & BACON L.L.P.

5

6                                  By:    */s/ Andrew L. Chang*___
                                             Andrew L. Chang

7

8                                                Attorneys for Defendants
                                             CARRIAGE SERVICES, INC.,

9                                                CARRIAGE CEMETERY SERVICES OF
                                             CALIFORNIA, INC., CARRIAGE FUNERAL

10                                               SERVICES OF CALIFORNIA, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL TO FEDERAL COURT
CASE NO. 4:19-cv-02035