UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOSHIRA BARAJAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CARRIAGE CEMETERY SERVICES OF CALIFORNIA, INC., et al., <br><br> Defendants. | Case No. 19-cv-02035-EMC <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO REMAND** <br><br> Docket No. 10 |

Plaintiffs are four individuals: Yoshira Barajas, Henry Grant, Nachae Williams, and Buriel Denise Williams Davis. They have filed a wage-and-hour class action against three affiliated entities: Carriage Cemetery Services of California, Inc. ("CCSI"); Carriage Funeral Services of California, Inc. ("CFSI"); and Carriage Services, Inc. ("CSI").[1] Defendants are in the business of "providing funeral and burial related services." FAC ¶ 12.

Plaintiffs initiated their lawsuit against Defendants in state court. Subsequently, CCSI and CFSI removed the case to federal court. They maintained that removal was removal was proper because of (1) diversity jurisdiction (once the citizenship of fraudulently joined defendants was ignored) and (2) jurisdiction under the Class Action Fairness Act ("CAFA"). *See* Docket No. 1 (Not. of Removal ¶ 14). Currently pending before the Court is Plaintiffs' motion to remand. The Court held a hearing on the motion on June 13, 2019. At the hearing, the Court **DENIED** the

---

[1] Note that CSI's name was not listed in the caption of Plaintiffs' original complaint, nor in the caption of the operative first amended complaint ("FAC"). In addition, CSI was neither identified nor discussed as a defendant in the "Parties" section of the original complaint and FAC. That being said, CSI's name was listed in ¶ 1 of the original complaint and FAC as a defendant, and all parties accept that CSI is a defendant in this case and has been from the inception of the case.

motion to remand. This order memorializes and supplements the Court's oral rulings and provides additional analysis as necessary.

## I.     **FACTUAL & PROCEDURAL BACKGROUND**

In the operative first amended complaint ("FAC"), Plaintiffs allege that they were jointly employed by CCSI, CFSI, and CSI. *See* FAC ¶¶ 1-2, 13. According to Plaintiffs, Defendants were joint employers because they "jointly control[led] the terms and conditions of employment," including "jointly and severally manag[ing] and control[ling] payroll functions, human resources functions, staffing and personnel functions, [and] sales licensing functions." FAC ¶ 2.

Although the FAC does discuss the alleged employment of all Plaintiffs, the bulk of the FAC is focused on Ms. Barajas. The allegations related to Ms. Barajas are as follows.

Ms. Barajas began working for Defendants in 2016 as a sales counselor. *See* FAC ¶ 15. "As a sales counselor, [her] job duties included meeting with clients, making and receiving phone calls with clients, attending local events to prospect for sales, and closing business deals." FAC ¶ 15. In mid-2018, "she was forced to quit . . . due to unfair working conditions" – in essence, not being paid for her work. FAC ¶ 15.

When Ms. Barajas initially started working for Defendants, she "worked an average of 52 to 58 hours per week"; however, Defendants only compensated her for 40 hours per week and never "allowed [her] to record hours beyond eight hours in a day." FAC ¶ 16.

Around the end of 2016, Defendants increased Ms. Barajas's hourly rate of pay from $15 to $17. But, after "about three weeks at this rate of pay," Defendants told her that "she had not sold enough to continue" at this rate; furthermore, they "transitioned Ms. Barajas" from an hourly employee to a commission-only employee even though her job duties largely remained the same (or increased). FAC ¶¶ 18-19. Defendants informed Ms. Barajas that, "if she made enough sales[,] she would be returned to her hourly position." FAC ¶ 19. "As a commission-only sales person, Ms. Barajas was not paid at all unless she made a sale." FAC ¶ 21. Ms. Barajas ended up working "7 days a week and an average of 70-80 hours per week" but "[s]he was not compensated for any hours worked." FAC ¶ 21. In all, Ms. Barajas was not compensated for over a year and a half (*i.e.*, 2017 through mid-2018). *See* FAC ¶¶ 21-22.

2

According to Plaintiffs, Ms. Barajas's experience was "part of a regular and common pattern and practice at Defendants' California properties. Each named Plaintiff[], and potential class member, experienced the same types of actual circumstances relating to their job duties and compensation" – *e.g.*, not being paid overtime, starting as an hourly employee and then being transitioned to a commission-only employee who was never paid, etc. FAC ¶¶ 23-35. "Plaintiffs believe there are 50-250 potential class members" who were, *e.g.*, not paid overtime and were transitioned to commission-only employees who were never paid. FAC ¶ 36; *see also* FAC ¶ 38 (alleging that the class "consists of more than 50 people").

Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following causes of action:

(1) Failure to pay minimum wages. *See* Cal. Lab. Code § 1197.

(2) Failure to pay overtime. *See* Cal. Lab. Code § 510.

(3) Breach of contract. *See* FAC ¶ 58 (alleging, *inter alia*, that Defendants failed "to pay wages and commissions earned by Plaintiffs under the terms of the employment and commission agreement").

(4) Fraud (intentional misrepresentation). *See* FAC ¶ 62 (alleging, *inter alia*, that "Defendants [fraudulently] induced Plaintiffs to continue performing their same hourly job duties under 'commission only' compensation with the promise of being placed back at hourly rates").

(5) Fraud (false promise). *See* FAC ¶ 71 (alleging, *inter alia*, the same as above).

(6) Violation of California Labor Code § 2751. *See* FAC ¶ 79 (alleging that Defendants violated the statute "which requires that whenever an employer enters into a contract of employment with an employee, the employer must provide a written contract to the employee if the employee's payment involves commissions for services rendered in California"); FAC ¶ 80 (seeking PAGA penalties for the violation of § 2751).

(7) Violation of California Business & Professions Code § 17200.

## II. DISCUSSION

A. Legal Standard

Title 28 U.S.C. § 1441 provides in relevant part "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed." 28 U.S.C. § 1441(a). Because district courts have original jurisdiction (1) where there is diversity jurisdiction or (2) where there is CAFA jurisdiction, a defendant may generally remove to federal court on either basis.[2]

Where removal is based on diversity jurisdiction, the defendant has the burden of proving such jurisdiction, and the burden of proof is preponderance of the evidence. *See Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010). Furthermore, there is a presumption against removal. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks omitted) (stating that "[i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction") (internal quotation marks omitted). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Hunter*, 582 F.3d at 1042 ("The 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court.").

Where removal is based on CAFA jurisdiction, there is no antiremoval presumption, *see Dart Cherokee Basin Op. Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (stating that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"), but the defendant still bears the burden of proving jurisdiction by a preponderance of the evidence. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) ("conclud[ing] that . . . the removing party bears the initial burden

---

[2] Of course, a removal pursuant to § 1332(a) is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

4

of establishing federal jurisdiction under § 1332(d)(2), [although] once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B)"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (stating that "[w]hether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged").

In the instant case, the Court need not address the issue of whether there is CAFA jurisdiction because the Court finds that there is diversity jurisdiction.

B. <u>Diversity Jurisdiction – Citizenship</u>

Title 28 U.S.C. § 1332(a) is the diversity jurisdiction statute. It provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between – . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The Court considers first the issue of citizenship.

For citizenship, complete diversity is required – *i.e.*, "each plaintiff must be diverse from each defendant." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001). In the instant case, there appears to be no dispute regarding the citizenship of the parties – *i.e.*:

- Plaintiffs are all citizens of California.
- CCSI and CFSI are both citizens of California.
- CSI is a citizen of Texas and Delaware.

Thus, as a facial matter, there is no complete diversity. Also, because CCSI and CFSI are citizens of California, they cannot remove because, under 28 U.S.C. § 1441(b)(2), removal is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

Defendants argue, however, that, if the citizenship of CCSI and CFSI is ignored, then there is complete diversity and the forum defendant rule is inapplicable. *See Arvizu v. Wal-Mart Stores, Inc.*, No. 17-cv-00201-LB, 2017 U.S. Dist. LEXIS 27342, at *3 (N.D. Cal. Feb. 27, 2017) (stating that, "despite the presence of a non-diverse or resident defendant, removal is proper when that

5

defendant was fraudulently joined"). Defendants argue that the citizenship of CCSI and CFSI *should* be ignored because they were fraudulently joined to the lawsuit. According to Defendants, CCSI and CFSI were fraudulently joined because, during the relevant period, both companies have had no employees and, "[w]ithout any employees, they necessarily could not have engaged in any conduct that would qualify them as employers," let alone joint employers. Opp'n at 3; *see also* Opp'n at 5 ("Without any employees, these two entities necessarily could not have engaged in any conduct that would qualify them as joint employers, such as exercising control over the wages, hours or working conditions of Plaintiffs or the putative class members.").

As noted above, a defendant has the burden of proving diversity jurisdiction by a preponderance of the evidence. However, where fraudulent joinder at issue, a higher standard of proof applies. More specifically, "[f]raudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). A defendant can establish fraudulent joinder by showing the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court" – that is, that the nondiverse defendant "joined in the action cannot be liable on any theory." *GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (internal quotation marks omitted). "[I]n many cases, the complaint will be the most helpful guide in determining whether a defendant has been fraudulently joined." *Id.* at 549; *see also id.* at 548-49 (asking "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants"; also asking whether there was "an obvious failure to state a claim") (emphasis in original; internal quotation marks omitted). But a defendant is "entitled to present additional facts" (*i.e.*, evidence) to support its position that there has been fraudulent joinder. *Id.* at 549; *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (indicating that "fraudulent joinder claims may be resolved by piercing the pleadings and considering summary judgment-type evidence such as affidavits and deposition testimony") (internal quotation marks omitted).

In the instant case, the Court finds that Defendants have sufficiently established fraudulent joinder the high burden of proof. Defendants have offered two declarations in which the declarants testify that, during the relevant period, CCSI and CFSI have no employees (in

6

California or elsewhere) and have not been involved in employment-related decisions. *See* M. Elliott Decl. ¶ 4 (testifying that, during the relevant period, CCSI and CFSI "have been and are non-employing affiliates [of CSI]" – *i.e.*, "[t]hey have had no employees"; adding that the companies also "are not involved in personnel decisions, including hiring, firing, compensation, or the manner and means of employment for any person employed by CSI or otherwise"); Ngo Decl. ¶ 6 (testifying that, during the relevant period, CCSI and CFSI "have never employed or otherwise engaged the services of Plaintiffs, nor have these two entities employed any persons in California or elsewhere"). Defendants have also submitted a stipulation from a different *Uschold v. CSI*, No. C-17-4424 JSW (EDL). *See* Chang Decl., Ex. 1 (stipulation). The plaintiffs in the *Uschold* case and Plaintiffs in the instant case are represented by the same counsel (the Benjamin Law Group). The *Uschold* plaintiffs initially sued CCSI and CFSI. In October 2017, the *Uschold* plaintiffs stipulated to replacing "[t]he incorrectly named Defendants [CCSI and CFSI] . . . with the correct Defendant, [CSI]." Chang Decl., Ex. 1 (Stip. ¶ 1).

Plaintiffs have not offered any evidence that substantively rebuts Defendants' evidence. Plaintiffs argue that "[t]he fact that a perhaps ill-advised stipulation occurred in a different suit to minimize motion practice and 'get on' with the case does not establish fraudulent joinder in the present suit." Mot. at 6. By itself, the stipulation might not be enough. But here the Court is being presented both with the Elliott and Ngo declarations, plus the stipulation in *Uschold*. At the hearing, Plaintiffs argued that the deposition of P. Elliott in the *Uschold* case indicates that CCSI and CFSI do have employees or have a role in employment-related decisions. But the Court has reviewed that deposition testimony and, at most, it simply reflects that there were six different entities in California affiliated with the Rolling Hills facility, including CCSI and CFSI. *See* Villanueva Decl., Ex. B (P. Elliott Depo. at 5-6, 165, 168). The deposition says nothing about whether CCSI and CFSI have employees (or had employees during the relevant period) or what role they play or have played, if any, with respect to employment-related decision. Moreover, the FAC alleges no specific facts supporting Plaintiff's contention that CCSI and CFSI were involved with or had authority over employment policies and decisions of CSI. The allegations of joint employment are wholly conclusory.

Because Defendants have sufficiently established fraudulent joinder, the Court disregards the citizenship of both CCSI and CFSI; accordingly, there is complete diversity between Plaintiffs and the remaining defendant CSI.

C.  Diversity Jurisdiction – Amount in Controversy

For diversity jurisdiction to obtain, the amount in controversy must exceed $75,000. Defendants contend that it is "facially apparent" from the FAC that Ms. Barajas's damages exceed $75,000.[3] *See* Docket No. 1 (Not. of Removal at 8 n.4) (arguing that damages exceed $75,000 even if PAGA penalties are excluded).

Defendants' calculations with respect to Ms. Barajas's damages are contained in their notice of removal:

> 32. Plaintiffs allege that Ms. Barajas resigned from CSI "[i]n mid-2018 . . . after being unpaid for over a year and half [sic] despite working 70-80 hours per week." *Id.* at ¶22. Conservatively calculating Ms. Barajas' claim for minimum wage and overtime solely for that alleged 18-month period at the California state minimum wage of $10.50 for 2017 and $11.00 in 2018, yields relief sought of $110,230. This amount in controversy was calculated as follows:
>
> - In 2017, minimum wage for the first 40 hours per week equals $21,840 (52 weeks x $10.50 x 40 hours). Incorporating liquidated damages, the alleged minimum-wage damage becomes $43,680. For the same 2017 period, Ms. Barajas' allegedly unpaid overtime wage would amount to $28,655 (52 weeks x (($10.50 x 1.5) x 35 hours)).
>
> - For the six-month period in 2018, at minimum wage for the first 40 hours per week equals $11,440 (26 weeks x $11.00 x 40 hours). Incorporating liquidated damages, the alleged minimum-wage damage increases to $22,880. For the same six-month period in 2018, Ms. Barajas' allegedly unpaid overtime wage would amount to $15,015 (26 weeks x ($11.00 x 1.5) x 35 hours)).

---

[3] The parties do not seem to dispute that, although there are multiple plaintiffs in the instant case, their damages cannot be aggregated for purposes of amount in controversy. *See Moore v. Genesco, Inc.*, No. C 06-3897 SBA, 2006 U.S. Dist. LEXIS 71115, at *11-12 (N.D. Cal. Sep. 20, 2006) (stating that "the claims of multiple plaintiffs may be aggregated to satisfy the amount in controversy threshold only if the multiple plaintiffs 'unite to enforce a single title or right, in which they have a common and undivided interest'[;] '[a]ggregation is appropriate only where a defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally'").

8

Docket No. 1 (Not. of Removal ¶ 32).[4]

In her reply brief, Plaintiffs criticizes Defendants' calculations related to her time as a commission-only employee. Plaintiffs basically have three criticisms, none of which is compelling.

    (1) Plaintiffs argue that Defendants' calculations are not reasonable because the issue is what she was owed as a commission-only employee (*e.g.*, her "base rate of pay") and Defendants' calculations treat her as if she were an hourly employee. But as reflected in the FAC, Plaintiffs' theory (or at least one theory) is that Defendants should have continued to pay Ms. Barajas as an hourly employee (and even promised to return her to that status once she made enough sales on commission, *see* FAC ¶ 19) because her job duties stayed the same.

    (2) Plaintiffs argue next that "Defendants assume a 100% violation rate for every month of the 18-month calculation period." Reply at 6. This assumption, however, was based on the allegations in the FAC. *See, e.g.*, FAC ¶ 21 (alleging that, "[a]s a commission-only sales person, Ms. Barajas was not paid at all unless she made a sale" and that "Ms. Barajas worked 7 days a week and an average of 70-80 hours per week" but "[s]he was not compensated for any hours worked"); FAC ¶ 22 (alleging that, "[i]n mid-2018, Ms. Barajas was forced to resign after being unpaid for over a year and a half despite working 70-80 hours per week").

    (3) Plaintiffs assert that it is unfair to assume, as Defendants did, that she worked every single week of the year (*i.e.*, 52 weeks total). This is a fair point. However, nothing in the FAC suggests that Ms. Barajas did not work for a substantial period of time, and so it is reasonable to infer that she took at most 2 weeks off each year (*e.g.*, as vacation).

---

[4] The Court notes that Defendants' calculations above are based on Plaintiffs' allegations that, from 2017 to mid-2018, Ms. Barajas worked as a commission-only employee when she should have been treated as an hourly employee instead. Defendants do *not* make any calculations for the period of time that Ms. Barajas first started working for Defendants in 2016 (i.e., when she was an hourly employee who typically worked more than 50 hours per week but who was compensated for only 40 hours per week). Therefore, any criticism that Plaintiffs make about calculations related to Ms. Barajas working as an hourly employee in 2016 is largely irrelevant.

Under this scenario, Defendants' calculations would be revised as follows:

- In 2017, minimum wage for the first 40 hours per week equals $21,000 (**50 weeks** x $10.50 x 40 hours). Incorporating liquidated damages, the alleged minimum-wage damage becomes $42,000. For the same 2017 period, Ms. Barajas' allegedly unpaid overtime wage would amount to $27,562.50 (**50 weeks** x (($10.50 x 1.5) x 35 hours)). TOTAL = $69,562.50.
- For the six-month period in 2018, at minimum wage for the first 40 hours per week equals $10,560 (**24 weeks** x $11.00 x 40 hours). Incorporating liquidated damages, the alleged minimum-wage damage increases to $21,120. For the same six-month period in 2018, Ms. Barajas' allegedly unpaid overtime wage would amount to $13,860 (**24 weeks** x ($11.00 x 1.5) x 35 hours)). TOTAL = $34,980.
- The two totals above yield damages of over $104,000 – and this is completely ignoring the damages that Ms. Barajas allegedly incurred in 2016 when she was an hourly employee (*i.e.*, she was paid only 40 hours per week even though she worked on average 52-58 hours per week).

Accordingly, for Ms. Barajas, Defendants have proved by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1446(c)(2)(B) (providing that "removal . . . is proper on the basis of an amount in controversy asserted [by the defendant in the notice of removal] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in 1332(a)").

As to the remaining plaintiffs, it is debatable whether the amount in controversy exceeds $75,000 for each of the remaining plaintiffs (*i.e.*, Mr. Grant, Ms. Williams, and Ms. Davis). On the one hand, there are allegations in the FAC that suggest the remaining plaintiffs stand in the same stead as Ms. Barajas. For example, in the FAC, Plaintiffs allege that Ms. Barajas's experiences "were a part of a regular and common pattern and practice at Defendants' California properties. Each named Plaintiff[], and potential class member, experienced the same types of factual circumstances relating to their [sic] job duties and compensation." FAC ¶ 23. On the other

hand, arguably, the FAC allegations simply indicate that, like Ms. Barajas, the other plaintiffs were only paid for 40 hours per week even though they worked more and that they were transitioned from hourly employees to commission-only employees and then not paid at all. The FAC allegations do not necessarily mean that the other plaintiffs also worked 52-58 hours per week as hourly employees, and then 70-80 hours per week as commission-only employees – or that the other plaintiffs also worked for a period of a year and a half as commission-only employees. *See, e.g.*, FAC ¶¶ 24-28 (with respect to Ms. Davis, alleging that she worked for Defendants from November 2014 to September 2016, that she worked as an hourly employee for three months and then was changed to a commission-only employee, that she worked between 48-54 hours per week and was not paid overtime, and that she worked for up to six months without compensation).

The Court, however, need not definitively rule because, so long as there is subject matter jurisdiction over Ms. Barajas's claims, then the Court has supplemental jurisdiction over the other plaintiffs' claims. As the Moore's treatise notes, "when at least one named plaintiff satisfies the amount-in-controversy requirement (and the other elements of jurisdiction are present, e.g., complete diversity), a district court may exercise supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional minimum for diversity jurisdiction." 15A Moore's Fed. Prac. – Civ. § 106.44[1][a]; *see also Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 549 (2005) (holding that, "where the other elements of jurisdiction are present [*e.g.*, complete diversity] and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction").

D. <u>Plaintiffs' Request for Jurisdictional Discovery</u>

For the foregoing reasons, the Court finds that it has diversity jurisdiction over the instant case and therefore the motion to remand is denied. To the extent Plaintiffs asked, at the hearing on the motion, for jurisdictional discovery, that request is denied. As the Court stated at the hearing,

11

Plaintiffs' request was not timely made. In addition, Plaintiffs' claim that CCSI and CFSI have employees or play a role in employment-related decisions is largely speculative. Evidence such as the deposition of P. Elliott is not sufficient to raise questions about CCSI and CFSI. *Cf. Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("'[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . .'"); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ("The denial of Boschetto's request for discovery, which was based on little more than a hunch that it might yield jurisdictionally relevant facts, was not an abuse of discretion.").

### III. CONCLUSION

For the foregoing reasons, the motion to remand is **DENIED**.

This order disposes of Docket No. 10.

**IT IS SO ORDERED**.

Dated: June 17, 2019

_____
EDWARD M. CHEN
United States District Judge