UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YOSHIRA BARAJAS, et al.,

Plaintiffs,

v.

CARRIAGE SERVICES, INC.,

Defendant.

Case No. 19-cv-02035-EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Docket No. 49

Plaintiffs are three individuals: Yoshira Barajas, Grant, and Nachae Williams. They have filed a wage-and-hour class action against Carriage Services, Inc. ("CSI"). According to Plaintiffs, CSI is in the business of "providing funeral and burial related services." SAC ¶ 11. Previously, the Court largely granted CSI's motion to dismiss the first amended complaint ("FAC"), leaving as the only surviving claim a cause of action for failure to pay overtime, as asserted by Ms. Barajas only. The Court gave Plaintiffs leave to amend, which they have done. Now pending before the Court is CSI's motion to dismiss the second amended complaint ("SAC").

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part CSI's motion.

## I. <u>DISCUSSION</u>

A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

United States District Court
Northern District of California

Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B.     First Cause of Action: Failure to Pay Minimum Wages

In the first cause of action, Plaintiffs allege that CSI has violated California Labor Code § 1197 by failing to pay them a minimum wage.

According to Plaintiffs, they "were often required to work more than 5 days consecutively for an average of 52-80 hours per day," SAC ¶ 56, but CSI did not "pay for any wages for all hours worked in excess of 40 in a week or 8 hours in a day" and instead "paid Plaintiffs for 40 hours worked per pay period." SAC ¶ 54. This resulted in a failure "to pay Plaintiffs the minimum wage for all hours worked." SAC ¶ 54. In other words, if one were to divide the number of hours worked by the amount Plaintiffs were actually paid, this would result in an hourly wage less than the minimum wage.

As an initial matter, the Court notes that, to evaluate Plaintiffs' claim, it must first have an

---

[1] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

understanding of what was the minimum wage requirement in California during the relevant period. It appears that the minimum wage requirement was as follows. *See* https://www.dir.ca.gov/iwc/minimumwagehistory.htm (last visited November 1, 2019).

- 2015: $9.00 per hour.
- 2016: $10.00 per hour.
- 2017: $10.50 per hour.
- 2018: $11.00 per hour.

With this baseline, the Court may now consider each of the three plaintiffs.

### 1. Ms. Barajas

Ms. Barajas's minimum wage claim actually has two components: (1) based on her time as a Consultant and (2) based on her time as a commission-only salesperson.

Ms. Barajas was hired in 2016. She was first hired as a Consultant, an hourly position. *See* SAC ¶¶ 14-16. She worked on average about 52-58 hours per week. However, CSI only paid her $15 an hour for up to 40 hours. *See* SAC ¶ 16. Under this scenario, Ms. Barajas was paid only $600 per week (40 hours x $15/hour). If she worked 58 hours in a week, this would translate to an hourly wage of $10.34 ($600/58 hours). An hourly wage of $10.34 exceeds the 2016 minimum wage requirement of $10/hour. Accordingly, if Ms. Barajas is claiming that she was not paid a minimum wage as a Consultant, that claim is not plausible.

According to Ms. Barajas, at some point (perhaps near the end of 2016), CSI unilaterally changed her position to a commission-only salesperson, even though the substance of the job was no different from her earlier position. *See* SAC ¶¶ 19-20. Ms. Barajas worked an average of 70-80 hours per week but "was not compensated for any hours worked." SAC ¶ 22. Under this scenario, Ms. Barajas did not receive any hourly wage even though she worked. This would make her hourly wage $0/hour – a clear violation of the minimum wage requirement no matter what year is at issue. Thus, to the extent Ms. Barajas is claiming a minimum wage violation for her time as a commission-only salesperson, she has viable claim.

### 2. Mr. Grant

Similar to above, Mr. Grant's minimum wage claim actually has two components: (1)

based on his time as an Advanced Planning Counselor and (2) based on his time as an Outside Sales Rep.

CSI hired Mr. Grant in 2015 as an Advanced Planning Counselor, an hourly position. *See* SAC ¶ 25. Mr. Grant "regularly worked six (6) days per week including one weekend day and an excess of 40 hours per week." SAC ¶ 27. CSI, however, "never paid Mr. Grant for any hours worked over 40 in a week." SAC ¶ 27. Although, under these circumstances, it is not impossible that a minimum wage violation took place with respect to Mr. Grant, there is not enough to make a plausible claim because Mr. Grant has said nothing about what hourly wage he was paid – and it is very open-ended as to how much Mr. Grant worked in excess of 40 hours per week. If, for example, Mr. Grant worked 50 hours per week and was paid $15 per hour for up to 40 hours, then there would be no minimum wage violation for 2015 or even 2016.

- 40 hours x $15/hour = $600/week.
- $600/50 hours = $12/hour.
- $12/hour > $ 9/hour or $10/hour (*i.e.*, the minimum wage requirements for 2015 and 2016).

According to Mr. Grant, in 2016, CSI unilaterally made him an Outside Sales Rep – even though the position was no different in substance from his prior position – and his compensation was changed to commission only. *See* SAC ¶ 28. "Mr. Grant did not make any sales as an Outside Sales Rep and thus received no compensation at all." SAC ¶ 28. It is a reasonable inference that, even though Mr. Grant did not make any sales, he put in hours in the attempt to make a sale. *See* SAC ¶ 29 (alleging that Mr. Grant left CSI "due [to its] failure to compensate him for hours worked for nearly a year"). That being the case, Mr. Grant – like Ms. Barajas – has a minimum wage claim for his time as an Outside Sales Rep.

3. Ms. Williams

Like Ms. Barajas and Mr. Grant's minimum wage claims, Ms. Williams's minimum wage claim must be considered with respect to (1) her time as Pre- Planning Counselor and (2) her time as an Outside Sales Rep.

CSI hired Ms. Williams in 2015 as a Pre-Planning Counselor. This was an hourly position

4

and she was paid $17 per hour. *See* SAC ¶¶ 31-32. However, CSI only paid Ms. Williams for 40 hours per week even though she "worked over 40 hours per week on average." SAC ¶ 32. Although, under these circumstances, it is not impossible that a minimum wage violation took place with respect to Ms. Williams, there is not enough to make a plausible claim because it is very open-ended as to how much Ms. Williams worked in excess of 40 hours per week. If, for example, Ms. Williams worked 50 hours per week and was paid $17 per hour for up to 40 hours, then there would be no minimum wage violation for 2015 or even 2016.

- 40 hours x $17/hour = $680/week.
- $600/50 hours = $13.60/hour.
- $13.60/hour > $ 9/hour or $10/hour (*i.e.*, the minimum wage requirements for 2015 and 2016).

According to Ms. Williams, at some point in time (likely 2015), CSI unilaterally made her an Outside Sales Rep – even though the position was no different in substance from her prior position – and her compensation was changed to commission only. *See* SAC ¶ 33. "Ms. Williams was forced to separate employment in 2017 because she was not paid for all hours worked." SAC ¶ 33. Even if it may reasonably be inferred that Ms. Williams incurred hours as an Outside Sales Rep, it is not possible to say whether a minimum wage violation occurred because – unlike Ms. Barajas and Mr. Grant – Ms. Williams does not claim that she was never paid any money at all for her time as an Outside Sales Rep. She simply claims that she was not paid for all hours worked.

Accordingly, the minimum wage claim brought by Ms. Williams fails with respect to her time as a Pre-Planning Consultant and her time as an Outside Sales Rep.

4. <u>Summary</u>

- Ms. Barajas's minimum wage claim as pled: not viable with respect to her time as a Consultant; viable with respect to her time as a commission-only salesperson.
- Mr. Grant's minimum wage claim as pled: not viable with respect to his time as an Advanced Planning Consultant; viable with respect to his time as an Outside Sales Rep.
- Ms. Williams's minimum wage claim as pled: not viable, either with respect to her

5

1    time as a Pre-Planning Consultant or as an Outside Sales Rep.

2        The only issue remaining is whether the Court should give leave to amend to the extent

3    that there are deficiencies (as identified above).  Arguably, the Court should not give leave to

4    amend because CSI moved to dismiss the first amended complaint based on similar deficiencies

5    and there are still problems with the second amended complaint.  The Court, however, shall give

6    Plaintiffs one final opportunity to cure as it is not clear that amendment would be futile.

7    C.    Second Cause of Action: Failure to Pay Overtime

8        In the second cause of action, Plaintiffs allege a failure to pay overtime in violation of

9    California Labor Code § 510.  *See* Cal. Lab. Code § 510(a) ("Any work in excess of eight hours in

10   one workday and any work in excess of 40 hours in any one workweek and the first eight hours

11   worked on the seventh day of work in any one workweek shall be compensated at the rate of no

12   less than one and one-half times the regular rate of pay for an employee.").

13       As the Court noted in conjunction with the prior motion to dismiss, *Landers v. Quality*

14   *Communications, Inc.*, 771 F.3d 638 (9th Cir. 2015), provides guidance as to what must be pled

15   for an overtime claim.  The Ninth Circuit noted in *Landers* that, before *Twombly* and *Iqbal*, "a

16   complaint under the FLSA for minimum wages or overtime wages merely had to allege that the

17   employer failed to pay the employee minimum wages or overtime wages."  *Landers*, 771 F.3d at

18   641.  Post-*Twombly* and *Iqbal*, more was required.

19           Although we agree . . . that detailed factual allegations regarding the
             number of overtime hours worked are not required to state a
20           plausible claim, we do not agree that conclusory allegations that
             merely recite the statutory language are adequate. . . .
21
             We agree with our sister circuits that in order to survive a motion to
22           dismiss, a plaintiff asserting a claim to overtime payments must
             allege that she worked more than forty hours in a given workweek
23           without being compensated for the overtime hours worked during
             that workweek.  We are mindful of the Supreme Court's admonition
24           that the pleading of detailed facts is not required under Rule 8, and
             that pleadings are to be evaluated in the light of judicial experience.
25           We also agree that the plausibility of a claim is "**context-specific.**"
             **A plaintiff may establish a plausible claim by estimating the**
26           **length of her average workweek during the applicable period**
             **and the average rate at which she was paid**, the amount of
27           overtime wages she believes she is owed, or any other facts that will
             permit the court to find plausibility.  Obviously, with the pleading of
28           more specific facts, the closer the complaint moves toward

6

> plausibility. However, like the other circuit courts that have ruled
> before us, we decline to make the approximation of overtime hours
> the *sine qua non* of plausibility for claims brought under the FLSA.
> After all, most (if not all) of the detailed information concerning a
> plaintiff-employee's compensation and schedule is in the control of
> the defendants.
>
> We further agree with our sister circuits that, **at a minimum**, a
> plaintiff asserting a violation of the FLSA overtime provisions must
> allege that she worked more than forty hours in a given workweek
> without being compensated for the hours worked in excess of forty
> during that week. . . .
>
> . . . .
>
> . . . . Although plaintiffs in these types of cases cannot be expected
> to allege "with mathematical precision," the amount of overtime
> compensation owed by the employer, they should be able to allege
> facts demonstrating there was at least one workweek in which they
> worked in excess of forty hours and were not paid overtime wages.

*Id.* at 644-46 (emphasis added). The Ninth Circuit indicated its agreement with the First Circuit

that an allegation that a plaintiff "'regularly'" worked more than forty hours in a week and was not

compensated was not sufficient. *Id.* at 642. The Ninth Circuit also indicated its agreement with

the Second Circuit that an allegation that a plaintiff worked more than forty hours per week

without being paid overtime for "'some or all weeks'" was not good enough either. *Id.* at 643

(noting that Second Circuit precedent seemed to require a failure to pay overtime "'in a *given*

workweek'") (emphasis in original).

Previously, the Court held that Ms. Barajas had adequately led an overtime claim. This is

because, in the FAC, Ms. Barajas had pled her average workweek (about 52-58 hours per week)

and the average rate she was paid ($15/hour for up to 40 hours and $0/hour thereafter). Under

*Landers*, this is enough to give rise to a plausible overtime claim.

According to Mr. Grant and Ms. Williams, they have, in the second amended complaint,

made allegations similar to those that the Court approved with respect to Ms. Barajas. That is true

as to Ms. Williams, but not Mr. Grant.

In the second amended complaint, there are no allegations at all about what Mr. Grant was

paid as an hourly wage. Nor has he tried to make other allegations to support an overtime claim –

*e.g.*, that he worked more than forty hours in a given (*i.e.*, specific) workweek without being

compensated for the hours worked in excess of forty during that week.

7

For Ms. Williams, however, the allegations are enough to support a plausible overtime claim. For Ms. Williams, it is alleged that: (1) she "worked over 40 hours per week on average"; (2) "[d]uring this time, Defendant paid Ms. Williams $17.00 per hour"; and (3) "Defendant only paid Ms. Williams up to 40 hours per week despite her actual hours worked." SAC ¶ 32. Therefore, the Court has before it allegations on Ms. Williams's average workweek (more than 40 hours per week) and the average rate she was paid ($17/hour for up to 40 hours and $0/hour thereafter).

Of course, the Court bears in mind that the above overtime claim is all predicated on Plaintiffs' being hourly employees. When Plaintiffs were moved over to commission-only salespeople or Outside Sales Reps, there are allegations that – for Ms. Barajas and Mr. Grant at least – they worked more than 40 hours per week and that they were not paid at all. This is enough to support a different overtime theory, at least with respect to Ms. Barajas and Mr. Grant. For Ms. Williams, this overtime theory seems to have no applicability. Ms. Williams has simply alleged that she "was forced to separate employment in 2017 because she was not paid for all hours worked." SAC ¶ 33. This is too conclusory to support an overtime theory.

Accordingly, the status of the overtime claim is as follows:

- Ms. Barajas's overtime claim as pled: viable as to both her time as a Consultant and as a commission-only salesperson.

- Mr. Grant's overtime claim as pled: not viable as to his time as an Advanced Planning Consultant; viable as to his time as an Outside Sales Rep.

- Ms. Williams's overtime claim as pled: viable as to her time a Pre-Planning Consultant; not viable as to her time as an Outside Sales Rep.

Similar to above, the Court shall give Plaintiffs leave to amend the overtime claim to the extent there are deficiencies because the Court cannot say at this juncture that amendment would be futile. As above, Plaintiffs are forewarned that this is their final opportunity to cure.

D.   Third Cause of Action: Breach of Contract

In the third cause of action, Plaintiffs assert a claim for breach of contract. Previously, the Court dismissed the claim noting as follows:

> Even if the parties' agreements involved more than written contracts, the terms of the written or oral agreements must be pled with some specificity so that an assessment can be made as to the plausibility of the alleged breach. For example, without knowing what agreements were made with respect to wages or commissions, the Court cannot say whether CSI breached with respect to payment of wages or commissions. Also, without knowing what agreements, if any, were made regarding ability to modify the agreements, the Court cannot say whether CSI breached by unilaterally changing the terms of the agreements.

Docket No. 34 (minutes).

Plaintiffs have made an attempt to clean up the breach-of-contract claim but it remains deficient. The second amended complaint confirms that Plaintiffs are not relying on any single written employment contract per se but rather are taking the position that certain promises were made to them during the employment relationship, with, *e.g.*, some of those promises being made orally and with other promises being made in "employee handbooks." SAC ¶ 39; *see also Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 680 (1988) (stating that, "[i]n the employment context, factors apart from consideration and express terms may be used to ascertain the existence and content of an employment agreement, including 'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged'"); *cf.* Cal. Civ. Code § 1621 (providing that "[a]n implied contract is one, the existence and terms of which are manifested by conduct"). The problem for Plaintiffs is that they still have not provided any clarity as to what exactly those promises were such that the Court can evaluate whether there was an alleged breach.

For example, the second amended complaint contains the following allegation: "Defendant[] failed to meet its obligation to pay wages and commissions earned by Plaintiffs under the terms of the employment and commission agreement; attempted to unilaterally alter the terms without Plaintiffs' knowledge or consent; and made deductions from Plaintiffs' earned wages." SAC ¶ 66. But none of this sheds light as to what exactly CSI's promises were. Did CSI promise, for instance, that it would pay a certain hourly wage or commission and then depart from that promise? Did CSI promise that it would not unilaterally change the terms of the employment

9

1  relationship?  Did CSI promise that it would not make deductions from wages?

2         Perhaps recognizing problems with the second amended complaint, Plaintiffs argue in their

3  opposition brief that

>     [s]pecific conditions and obligations included in and reasonably
>     inferred from the SAC are: oral promises Defendant made to each
>     Plaintiff concerning their hourly wages for all hours worked,
>     classification as an hourly employee, and commissions to be earned
>     on any sales; Defendant's written policies; Defendant's practices of
>     paying each Plaintiff hourly wages at the outset of their
>     employment; oral representations that each Plaintiff could be
>     returned from [commission-only] to hourly wages; oral
>     representations that each Plaintiff would receive a commission for
>     all sales made.

10 Opp'n at 19.  But even here Plaintiffs are still vague.  What oral promise did CSI make about

11 hourly wages, classification as an hourly employee, or commissions?  Only then can the Court

12 understand whether there was an alleged breach.

13        The closest Plaintiffs seem to come on breach of contract is as follows:

14        (1) CSI allegedly "orally promised Ms. Barajas that if she made enough sales she

15            would be returned to her hourly position."  SAC ¶ 20.  But even here that

16            promise is too vague to constitute a contract given the allegation in the SAC

17            that "Ms. Barajas was never informed of how many sales would be sufficient to

18            return her to an hourly position despite the representation that she would be

19            returned to hourly pay based on her sales numbers."  SAC ¶ 22; *see also*

20            *Halvorsen v. Aramark Unif. Servs.*, 65 Cal. App. 4th 1383, 1389 (1998) (stating

21            that "[a]n alleged oral contract with vague and uncertain terms is not binding");

22            *Jaffe v. Albertson Co.*, 243 Cal. App. 2d 592, 600 (1966) (stating that, "in order

23            to support [the] position that a binding oral contract was . . . created, . . . it must

24            appear from the evidence that the essential terms of the contract were

25            sufficiently definite"); *cf. Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1116

26            (C.D. Cal. 2002) (stating that "[w]hether a contract is sufficiently definite and

27            certain in its essential terms to be enforceable is a question of law for the

28            court").

United States District Court
Northern District of California

1           (2) CSI "orally promised [Ms. Williams] a percentage of each sale she made [as a

2                Pre-Planning Counselor]. However, Defendant never provided the terms of the

3                commission system in writing to Ms. Williams, including the percentage of

4                each sale she would receive. Ms. Williams made at least one sale. Defendant

5                paid Ms. Williams different percentages each time she made a sale." SAC ¶ 32.

6                As above, however, the promise to pay an unspecified percentage of a sale is

7                too vague to constitute a contract.

8        For the foregoing reasons, the Court dismisses the breach-of-contract claim. The dismissal

9 is with prejudice. In contrast to above, the Court finds futility because Plaintiffs have not been

10 able to identify even one nonvague promise that was allegedly breached.

11   E.     Fourth and Fifth Causes of Action: Fraud – Intentional Misrepresentation and False

12          Promise

13        In the fourth cause of action, Plaintiffs assert a claim for intentional misrepresentation and,

14 in the fifth cause of action, a claim for false promise. The claims are not clearly pled but seem to

15 be predicated on the same underlying facts – *i.e.*, that CSI induced Plaintiffs to become

16 commission-only employees or Outside Sales Reps "with the promise of being placed back at

17 hourly rates." SAC ¶ 70.

18        CSI argues that the fraud claims should be dismissed because Plaintiffs have failed to

19 comply with Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that, "[i]n alleging fraud or

20 mistake, a party must state with particularity the circumstances constituting fraud or mistake."

21 Fed. R. Civ. P. 9(b). "To properly plead fraud with particularity under Rule 9(b), 'a pleading must

22 identify the who, what, when, where, and how of the misconduct charged, as well as what is false

23 or misleading about the purportedly fraudulent statement, and why it is false.'" *Davidson v.*

24 *Kimberly-Clark Corp.*, 873 F.3d 1103, 1110 (9th Cir. 2017).

25        CSI's argument has merit. For example, Plaintiffs make no attempt to identify *who* made

26 the promise that they would be placed back to hourly rates. This is information that Plaintiffs

27 should know – *i.e.*, it is not information within CSI's exclusive possession.

28        In addition, Plaintiffs have not sufficiently explained *why* the promise was false. If the

contention is that the promise was false because CSI never intended to move Plaintiffs back to hourly rates,[2] then the question becomes what allegation is there that CSI never had this intent? Under California law, a defendant's subsequent failure to perform as promised – by itself – is not enough to infer that the defendant did not intend to perform when the promise was made. "'[S]omething more than nonperformance is required to prove the defendant's intent not to perform his promise.'" *Tenzer v. Superscope*, 39 Cal. 3d 18, 30 (1985) (adding that "fraudulent intent must often be established by circumstantial evidence" – *e.g.*, "[the] defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform" – but, "if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury").

Accordingly, dismissal of the fraud claims is warranted. The Court, however, shall give Plaintiffs leave to amend to the extent they can plead, in good faith, factual allegations showing that CSI never intended to perform its promise to return them to hourly rates. Plaintiffs must also clearly plead the who, what, when, where, and how of the misconduct charged.

To the extent Plaintiffs suggest that they should be allowed to amend to assert broader fraud claims, the Court denies that request for relief. In their opposition brief, Plaintiffs tried to argue that there are all kinds of fraud implicated in the second amended complaint,

> includ[ing]: Plaintiffs' employment categorization as hourly vs[.] commissioned staff; compensation rates; compliance with the applicable minimum wage; reporting and compensating Plaintiffs for all hour worked; methods of compensation; timing of compensation; eligibility to change employment categorization; and the terms, conditions, and method of calculating commission under Defendant's commission system.

Opp'n at 23. This laundry list, however, is not illuminating in any meaningful way. Moreover, the laundry list does not specify the who, what, when, where, and how of the misconduct charged; what is false or misleading about the purportedly fraudulent statement; and why it is false.

---

[2] "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (internal quotation marks omitted).

F.    <u>Sixth Cause of Action: Violation of the Private Attorneys General Act ("PAGA")</u>

In the sixth cause of action, Plaintiffs bring a PAGA claim pursuant to California Labor Code § 2699. *See* Cal. Lab. Code § 2699(a) (providing that "any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency [LWDA] . . . for a violation of this code[] may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3").  Plaintiffs' PAGA claim is predicated on alleged violations of the following California Labor Code sections:

- Section 201.  *See* Cal. Lab. Code § 201(a) (providing that, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately").

- Section 203.  *See id.* § 203(a) (providing that, "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Section[] 201, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

- Section 206.  *See id.* § 206(a) (providing that, "[i]n a case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed"); *id.* § 206(b) (providing for penalties if an "employer having the ability to pay . . . willfully fails to pay" wages that the Labor Commissioner determines are due).

- Section 208.  *See id.* § 208 (providing that "[e]very employee who is discharged shall be paid at the place of discharge").

- Section 227.3.  *See id.* § 227.3 (providing that, "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation

United States District Court
Northern District of California

shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility of time served").

- Section 512. *See id.* § 512 (providing that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes" and that "[a]n employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes").

- Section 1194. *See id.* § 1194 (providing that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation").

In essence, the above statutes relate to (1) unpaid wages; (2) vacation time; and (3) meal time.

In its motion to dismiss, CSI brings a number of challenges to the PAGA claim. Many of the arguments are problematic. For example, CSI argues that Plaintiffs have failed to plead that they administratively exhausted their PAGA claim with the LWDA prior to filing suit. *See generally id.* § 2699.3(a) (providing that "[a] civil action by an aggrieved employee . . . alleging a violation of any provision listed in Section 2699.5 shall commence only after the following requirements have been met"; requirements including filing a notice with the LWDA and the employer and waiting to hear back from the LWDA for 65 days). According to CSI, Plaintiffs' assertion of administrative exhaustion is too conclusory. But it is not clear what else Plaintiffs should have to plead – *i.e.*, beyond what is already alleged in the second amended complaint. *See* SAC ¶ 87 (alleging that "Plaintiffs timely exhausted their claims with the [LWDA]" and "did not receive notice of the LWDA's intent to investigate or otherwise prosecute the claim within the allowed time period").

As another example, CSI contends that the written notice that Plaintiffs gave to, *inter alia*, the LWDA was substantively inadequate. Under PAGA, "[t]he aggrieved employee or representative shall give written notice by online filing with the [LWDA] and by certified mail to

14

the employer of the specific provisions of this code alleged to have been violated, *including the facts and theories to support the alleged violation*." Cal. Lab. Code § 2699.3(a)(1)(A) (emphasis added). CSI maintains that Plaintiffs did not give sufficient notice of the facts and theories to support the alleged violations of the California Labor Code. In support, CSI cites to *Alcantar v. Hobart Service*, 800 F.3d 1047 (9th Cir. 2015). There, the Ninth Circuit agreed that the notice that the plaintiff gave to the LWDA and the employer did "not include sufficient facts or theories" but rather just consisted of "a series of legal conclusions." *Id.* at 1056-57. The plaintiff's letter had stated: "'Plaintiff contends that Defendant (1) failed to pay wages for all time worked; (2) failed to pay overtime wages for overtime worked;'" and so forth. *Id.* at 1057. The Ninth Circuit noted: "The only facts or theories that could be read into this letter are those implied by the claimed violations of specific sections of the California Labor Code – that Hobart failed to pay wages for time worked, failed to pay overtime wages for overtime worked," and so forth. *Id.* It continued: "Plaintiff's letter – a string of legal conclusions with no factual allegations or theories of liability to support them – is insufficient to allow the [LWDA] to intelligently assess the seriousness of the alleged violations. Neither does it provide sufficient information to permit the employer to determine what policies or practices are being complained of so as to know whether to fold or fight." *Id.*

The instant case, however, is largely distinguishable from *Alcantar*. A copy of Plaintiffs' notice to, *inter alia*, the LWDA can be found as Exhibit B to CSI's request for judicial notice. *See* Def.'s RJN, Ex. B (notice to LWDA). In the notice, Plaintiffs explain, for instance, that there was an overtime violation because "Carriage regularly required its present and former employees, including Ms. Barajas, to work in excess of 8 hours in a day and/or 40 hours in a week," but "failed to pay Ms. Barajas overtime premium pay" – even though she "did not fall within any of the exemptions to overtime within the California Industrial Welfare Commission's Wage Orders." Def.'s RJN, Ex. B. Plaintiffs also explain, *e.g.*, that "Carriage's standard practice and policy of refusing to pay overtime wages for overtime hours worked, as detailed above, resulted in current and former employees including Ms. Barajas, receiving less than minimum wages for all hours worked." Def.'s RJN, Ex. B. Admittedly, Plaintiffs' notice does not provide a great deal in terms

15

of specifics. But the notice has – for the most part – more detail compared to that in *Alcantar*; moreover, in *Alcantar*, the Ninth Circuit did not hold that it was requiring the PAGA notice to be specific enough to withstand a 12(b)(6) motion. The only place where the PAGA notice does seem to be lacking under *Alcantar* is with respect to the alleged meal break and vacation violations (as opposed to the wage violations). For these alleged violations, the Court does find the PAGA notice deficient.

And as yet another example, CSI asserts that the PAGA claim is time barred. There is a one-year statute of limitations for PAGA claims. *See Martinez v. Antique & Salvage Liquidators, Inc.*, No. C09-00997 HRL, 2011 U.S. Dist. LEXIS 12198, at *22-23 (N.D. Cal. Feb. 8, 2011) (concluding that "a one-year statute of limitations period clearly applies to Plaintiffs' PAGA claim" because "[t]he California Code of Civil Procedure . . . provides for a one-year statute of limitations for an action upon a statute for a penalty or forfeiture; citing California Code of Civil Procedure § 340 and adding that "[m]any courts . . . have previously made clear that the civil penalties recoverable under PAGA are 'penalties' within the meaning of . . . § 340(a)"). According to CSI, the Court must count back from the date where Plaintiffs first pled a PAGA claim – *i.e.*, in the second amended complaint, which was filed on September 25, 2019. *See* Docket No. 48 (SAC). Also, the Court must add 65 days to account for tolling – *i.e.*, "PAGA's statute of limitations may be tolled for up to 65 days 'to account for the period between which LWDA receives a PAGA complaint letter and when it provides notice to the aggrieved employee whether it grants permission for the aggrieved employee to initiate a civil action.'" *Bush v. Vaco Tech. Servs., LLC*, No. 17-cv-05605-BLF, 2018 U.S. Dist. LEXIS 74613, at *36 (N.D. Cal. May 2, 2018). According to CSI, reaching back a total of 165 days from September 25, 2019, means that "Plaintiffs cannot seek PAGA claims for any violation that occurred before July 22, 2018 at the earliest." Mot. at 18.

There are several problems with CSI's position. First, even if Mr. Grant and Ms. Williams stopped working for CSI in 2017, *see* SAC ¶¶ 29, 34 (alleging that Mr. Grant and Ms. Williams left CSI in 2017), Ms. Barajas stopped working "in or around mid-2018." SAC ¶ 14. Thus, even under CSI's argument, Ms. Barajas's PAGA claim could fall within the statute of limitations.

Second, as Plaintiffs contend, there seems to be a fair basis to apply relation back for Ms.

Barajas's PAGA claim – *i.e.*, the PAGA claim as pled in the second amended complaint would get

the benefit of the original complaint's filing date (of March 8, 2019). *See* Docket No. 1 (original

complaint); *see also* Fed. R. Civ. P. 15(c)(1) (providing that "[a]n amendment to a pleading relates

back to the date of the original pleading when [*inter alia*] (B) the amendment asserts a claim or

defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out

– in the original pleading"). This is because the PAGA claim as pled in the second amended

complaint is largely about unpaid wages, and unpaid wages are largely the gist of the original

complaint as well.[3]

There are only three arguments that CSI makes challenging the PAGA claim that provide a

basis for dismissal – namely, (1) the PAGA notice was deficient with respect to the alleged meal

break and vacation violations (discussed above); (2) the notice to the LWDA only mentioned Ms.

Barajas and not Mr. Grant or Ms. Williams and (3) the notice to the LWDA asserted misconduct

by entities different from CSI, (a) Carriage Cemetery Services of California, Inc. ("CCSI") and (b)

Carriage Funeral Services of California, Inc. ("CFSI"). The first issue has already been addressed

above. As for the second and third issues, Plaintiffs do not dispute that the notice mentioned only

Ms. Barajas and asserted misconduct by entities different from CSO. Instead, they seem to rest on

the point that Ms. Barajas at least still has a PAGA claim; also, they argue that, even if the notice

did not assert violations of the California Labor Code by CSI and was not directed to CSI, the

purpose of the PAGA notice requirement has been satisfied in that CSI eventually did get actual

notice of the issues being raised by Ms. Barajas (presumably, via CCSI and CFSI) and *voluntarily*

inserted itself into this lawsuit.[4] Although not entirely clear, Plaintiffs also suggest that notice

---

[3] In the original complaint as well as the first amended complaint (the latter being filed on April 10, 2019), Plaintiffs asserted a violation of California Labor Code § 2751 and claimed civil penalties were due under PAGA for *that* violation. *See* Cal. Lab. Code § 2751(a) (providing that, "[w]henever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid"). But, arguably, a § 2751 violation is not really about unpaid wages.

[4] The original complaint named only CCSI and CFSI as defendants. However, CCSI and CFSI,

1    regarding CCSI and CFSI should be deemed sufficient notice to CSI because "employer" has

2    never been defined for PAGA purposes.  *See* Cal. Lab. Code § 2699.3(a)(1)(A) (providing that

3    "[t]he aggrieved employee or representative shall give written notice by online filing with the

4    [LWDA] and by certified mail to the employer of the specific provisions of this code alleged to

5    have been violated," but not defining "employer").

6          Plaintiffs' second argument is not persuasive.  Although there is no definition of

7    "employer" for PAGA purposes, it is likely that the meaning of "employer" will likely depend on

8    who is an "employer" within the meaning of the underlying violation supporting the PAGA claim.

9    *Cf. Pena v. Taylor Farms Pac.*, Inc., No. 2:13-CV-01282-KJM-AC, 2014 U.S. Dist. LEXIS

10   56792, at *14 (E.D. Cal. Apr. 22, 2014) (in considering what "employer" means for PAGA

11   purposes, considering the goals of PAGA administrative exhaustion  – *e.g.*, "'allowing the LWDA

12   to act first on more "serious" violations . . . and giv[ing] employers an opportunity to cure less

13   serious violations'"; "[m]indful of these goals, the court finds 'the employer' to refer to any and

14   all employers against whom violations are alleged").  For instance, if a PAGA claim is based on a

15   § 1194 violation (failure to pay a minimum wage or overtime), then a court should look to the

16   meaning of "employer" for § 1194 purposes.  *See, e.g.*, *Martinez v. Combs*, 49 Cal. 4th 35, 64

17   (2010) (defining "employ" for § 1194 purposes as "(a) to exercise control over the wages, hours or

18   working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common

19   law employment relationship").  For purposes of § 1194, CSI clearly would be the employer, and

20   not CCSI or CFSI, the latter two being fraudulently joined.  The same is true as to the other Labor

21   Code provisions at issue.

22         Plaintiffs' first argument, however, has some force.  If the goal of PAGA administrative

23   exhaustion is to give the employer the opportunity to cure, here, there is no doubt that CSI

24   eventually got actual notice of the alleged wage-and-hour violations.  On the other hand, one could

25   argue that the loop should be properly closed as PAGA would seem to technically require such –

26   *i.e.*, Plaintiffs should formally have to give notice to CSI of the alleged California Labor Code

27   _____

28   *along with CSI*, removed the case from state to federal court, arguing that CCSI and CFSI were
     fraudulently joined.  The Court ultimately agreed that there was fraudulent joinder.

1  violations. Enforcing this requirement would not likely result in any prejudice to Plaintiffs; even

2  if Plaintiffs have to give notice now, Ms. Barajas at least can still avoid a statute-of-limitations bar

3  based on relation back.

4      The Court therefore dismisses the PAGA claim but without prejudice. If Ms. Barajas

5  wishes to submit a new letter to the LWDA implicating CSI and providing more details about any

6  alleged meal break or vacation violation, she may do so. Once administrative exhaustion is

7  completed, she may then seek leave to amend to add a PAGA claim.[5] The Court gives this relief

8  to Ms. Barajas only as she is the only plaintiff who is not time barred. The other Plaintiffs may

9  not assert PAGA claims.

10 G.    Seventh Cause of Action: Violation of California Labor Code § 2751

11      In the seventh cause of action, Plaintiffs allege a violation of California Labor Code §

12 2751. Section 2751 provides as follows:

13          Whenever an employer enters into a contract of employment with an
            employee for services to be rendered within this state and the
14          contemplated method of payment of the employee involves
            commissions, the contract shall be in writing and shall set forth the
15          method by which the commissions shall be computed and paid.

16 Cal. Lab. Code § 2751.

17      CSI argues that the § 2751 should be dismissed for several reasons: (1) there is no private

18 right of action for a violation of § 2751; (2) even if Plaintiffs are trying to bring a PAGA claim

19 based on a § 2751 violation, the notice that Plaintiffs gave to, *inter alia*, the LWDA did not

20 identify that particular section of the California Labor Code as a legal predicate; (3) even if there

21 were no administrative exhaustion issue, the PAGA claim would still fail because it is time barred.

22      1.    Private Right of Action

23      There appears to be a split of authority as to whether there is a private right of action for §

24 2751.

25      For example, in *Beard v. IBM*, No. C 18-06783 WHA, 2019 U.S. Dist. LEXIS 60302

26 (N.D. Cal. Apr. 7, 2019), Judge Alsup concluded that there is no private right of action, reasoning

27

28 _____
[5] The Court would prefer that the parties stipulate to an amendment, reserving the right of CSI to
move to dismiss the PAGA claim as necessary.

as follows:

> [T]he Labor Code no longer provides a private right of action for a violation of Section 2751. Prior to January 2012, Section 2752 provided that "[a]ny employer who does not employ an employee pursuant to a written contract as required by Section 2751 shall be liable to the employee in a civil action for triple damages." When the California Legislature amended Section 2751 in 2011, it repealed Section 2752. Because the Labor Code no longer affords a private right of action for violations of Section 2751, the motion to dismiss this standalone claim is GRANTED.

*Id.* at *15; *see also Swafford v. IBM*, 383 F. Supp. 3d 916, 934 (N.D. Cal. 2019) (Koh, J.) (stating that, "[b]ecause the Labor Code no longer provides a private right of action for violations of § 2751, the motion to dismiss this standalone claim is GRANTED").

However, another district court reached the opposite conclusion in *Belderol v. Glob. Tel*Link*, No. CV 13-05440 SJO (MANx), 2013 U.S. Dist. LEXIS 203022 (C.D. Cal. Oct. 15, 2013), explaining as follows:

> While Section 2752 has been repealed, and treble damages are no longer available for a violation of Section 2751, an employee can likely still "bring a claim against an employer who fails to provide the required written contract" but "the employee will just not be able to receive treble damages for the employer's omission." Assemb. B. 1396 Hearing 4-5.

*Id.* at *12 n.8.

In *Keenan v. Cox Communications California, LLC*, No. No. 18cv129-MMA (LL), 2019 U.S. Dist. LEXIS 121819 (S.D. Cal. July 22, 2019), the court acknowledged both *Beard* and *Belderol* but took a different approach from both cases. The *Keenan* court indicated that, even if there were no private right of action for a § 2751 violation per se, a plaintiff could still bring a PAGA claim based on a § 2751 violation because "section 2751 does not contain its own civil penalty provision." *Id.* at *27.

At the end of the day, the Court need not definitively rule on this issue because, as discussed below, even if Plaintiffs could bring a PAGA claim based on a § 2751 violation (as the Court suggested in *Keenan* and as Plaintiffs contend), the PAGA claim must be dismissed based on failure to administratively exhaust and based on a time bar.

2.      PAGA Claim: Administrative Exhaustion

CSI argues that the LWDA did not mention a § 2751 violation but instead claimed violations of other sections in the California Labor Code.  In response, Plaintiffs suggest that CSI has misconstrued the statutory scheme for PAGA.  CSI is correct in its analysis.

- California Labor Code 2699(f) provides, that, "*[f]or all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation for these provisions, as follows . . . .*"  Cal. Lab. Code § 2699(f) (emphasis added).

- Section 2699(a) provides that "any provision of this code that provides for a civil penalty to be assessed and collected by the [LWDA] . . . may, as an alternative, be recovered through a civil action brought by an aggrieved employee . . . pursuant to the procedures specified in Section 2699.3."  *Id.* § 2699(a).

- One of the procedures specified in § 2699.3 concerns notice of the alleged misconduct to the proper state agency and to the employer.  There are three different notice provisions.  Section 2699.3(a) provides that "[a] civil action by an aggrieved employee pursuant to subdivision (a) or (f) of Section 2699 alleging a violation of *any provision listed in Section 2699.5* shall commence only after the following requirements have been met [*e.g.*, notice to the LWDA and employer]."  *Id.* § 2699.3(a) (emphasis added).  Section 2699.3(b) has a slightly different notice requirement where the aggrieved employee "alleg[es] a violation of *any provision of Division 5 (commencing with Section 6300)* other than those listed in Section 2699.5" – *i.e.*, notice to a different agency is required, plus notice to the employer.  *Id.* § 2699.3(b) (emphasis added).  Finally, § 2699.3(c) requires notice to the LWDA and the employer where the aggrieved employee asserts "a violation of *any provision other than those listed in Section 2699.5 or Division 5 (commencing with Section 6300)*."  *Id.* § 2699.3(c) (emphasis added).  In the instant case, CSI is charged with a violation of § 2751.  Section 2751 is not a provision listed in § 2699.5.  Nor is § 2751 a provision of Division 5 (commencing with § 6300).

21

United States District Court
Northern District of California

Therefore, § 2699.3(c) applies. And the notice requirement in § 2699.3(c) (like §§ 2699(a) and (b)) requires identification of "the specific provisions of this code alleged to have been violated." *Id.* § 2699.3(c)(1)(A).

Accordingly, CSI's argument for dismissal of a PAGA claim based on a § 2751 violation has merit – *i.e.*, it was not specifically identified and thus there has not been administrative exhaustion.

### 3. PAGA Claim: Time Bar

Finally, CSI is correct that, even if the administrative exhaustion problem could be overlooked, the PAGA claim would be futile because it is time barred. As noted above, § 2751 provides as follows.

> Whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid.

Cal. Lab. Code § 2751.

Per the allegations in the second amended complaint, at the latest, Ms. Barajas was not given a written contract regarding commissions at "the end of 2016" when it converted her from an hourly employee to a commission-only salesperson. SAC ¶ 18. Similarly, with respect to Mr. Grant, he was not given a written contract regarding commissions in 2016 when CSI "unilaterally changed [his] position to Outside Sales Rep[] and orally represented that . . . his compensation was changed to commission-only." SAC ¶ 28. Finally, Ms. Williams was not given a written contract regarding commissions in 2015 when it moved her into the position of "Outside Sales Rep and paid her commission only." SAC ¶ 32; *see also* SAC ¶ 31.

Given that there is a one-year statute of limitations for PAGA claims, Ms. Barajas and Mr. Grant should have filed suit sometime in 2017, and Ms. Williams in 2016. Plaintiffs, however, did not bring suit until several years later, *i.e.*, in 2019. Notably, Plaintiffs do not address the limitations bar in their opposition brief, instead simply arguing that "section 2751 may serve as a predicate violation of the UCL [*i.e.*, § 17200]." Opp'n at 12.

4.     Summary

Plaintiffs claim that their § 2751 claim is really a PAGA claim based on a § 2751 violation. That being the case, the PAGA claim is deficient for two reasons: (1) failure to administratively exhaust and (2) a time bar. To the extent Plaintiffs claim a § 17200 claim based on a § 2751 violation, that is addressed below.

H.     Eighth Cause of Action: Violation of California Labor Code § 203

In the eighth cause of action, Plaintiffs assert a violation of California Labor Code § 203. Section 203(a) provides that,

> [i]f an employer willfully fails to pay, without abatement or reduction, in accordance with [*inter alia*] Section[] 201 . . . , any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203(a). Section 201(a) provides that, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." *Id.* § 201(a).

In its motion to dismiss, CSI argues that the § 203/201 claim is derivative of Plaintiffs' minimum wage and overtime claims. Plaintiffs do not dispute such in their opposition. Thus, the § 203/201 claim rises or falls with the minimum wage and/or overtime claims. Plaintiffs have leave to amend the § 203/201 claim consistent with the above.

I.     Ninth Cause of Action: Violation of California Business & Professions Code § 17200

Finally, in the ninth cause of action, Plaintiffs allege that CSI has violated § 17200. According to Plaintiffs, CIS has "engag[ed] in unfair, unlawful, and oppressive activity." SAC ¶ 99. Plaintiffs also allege that CSI "generated income, reduced its employee costs, and enjoyed higher stock prices as a direct result of the above-mentioned unlawful and unfair business practices," and that "Plaintiffs and the Class are therefore entitled to restitution of any and all monies received by Defendant while engaged in such practices." SAC ¶ 100. Plaintiffs add that they "are entitled to restitution of their unpaid commissions, costs, and expenses in addition to interest, penalties, reasonable attorney's fees and costs." SAC ¶ 101.

As indicated above, Plaintiffs seem to be claiming only the unlawful and unfair prongs of § 17200. As a general matter, the § 17200 claim rises or falls with the other claims discussed above with respect to liability. The one exception is the § 2751 violation – *i.e.*, although it is not a standalone claim and cannot support a PAGA claim, it could support a § 17200 claim because the statute of limitations for § 17200 is four years. *See* Cal. Bus. & Prof. Code § 17208. Section 17200 can be based as a claim which otherwise does not provide a private right of action. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (stating that "[i]t does not matter whether the underlying statute also provides for a private cause of action; section 17200 can form the basis for a private cause of action even if the predicate statute does not"); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) (stating that "[i]t is not necessary that the predicate law provide for civil enforcement" in order for a plaintiff to have a § 17200 claim). Relief, however, is a different matter.

CSI contends that (1) § 17200 "authorizes only equitable relief, not legal damages," and (2) equitable relief is unnecessary here because, if Plaintiffs prevail on their other claims, they will get an adequate remedy at law. Mot. at 23. This argument seems premature. That being said, not all of the relief Plaintiffs seek falls into the category of equitable relief, in particular, restitution. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010) (noting that, "[w]hile private individuals can sue under the UCL, courts can issue orders only to prevent unfair competition practices and to restore to any person in interest any money or property . . . which may have been acquired by means of such unfair competition[;] [t]hus, a private plaintiff's remedies are generally limited to injunctive relief and restitution") (internal quotation marks omitted).

For example, Plaintiffs indicate that they seek penalties as relief for the § 17200 claim but "Labor Code penalties are generally not recoverable as a form of UCL restitution." *Noe v. Superior Court*, 237 Cal. App. 4th 316, 326 (2015) (stating that "Labor Code penalties are generally not recoverable as a form of UCL restitution"). Also, Plaintiffs argue that they should be given any money that CSI *earned* (including but not limited to a higher stock price) by, *e.g.*, not having to pay them wages, but this is categorically not restitution – *i.e.*, restoring to Plaintiffs what was taken from them. Such profits, however, are not reconcilable as restitution under §

24

17200.  *See SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1184 (S.D. Cal. 2012)

(noting that "[d]isgorgement is a broader remedy than restitution, but it may sometimes include a

restitutionary element"; "[r]estitutionary disgorgement, which focuses on the victim's loss, may be

recovered under the UCL," but "nonrestitutionary disgorgement, which focuses on the defendant's

gain and does not require that the plaintiff suffered an identifiable loss, is not available under the

UCL").  *Cf. Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401-02 (2010) (concluding that

"section 203 penalties are not recoverable as restitution" but unpaid wages are recoverable;

"[s]ection 203 is not designed to compensate employees for work performed" but instead "is

intended to encourage employers to pay final wages on time, and to punish employers who fail to

do so" – *i.e.*, "it is the employers' action (or inaction) that gives rise to section 203 penalties"

whereas "[t]he vested interest in unpaid wages . . . arises out of *the employees'* action, i.e., their

labor") (emphasis in original).

In summary, the § 17200 claim rises or falls with the claims discussed above.  Plaintiffs

have leave to amend the § 17200 claim to the extent the Court has allowed amendment with

respect to the claims above.  The Court shall not permit any nonrestitutionary relief requested by

Plaintiffs.

## II.      <u>CONCLUSION</u>

For the foregoing reasons, the Court grants in part and denies in part CSI's motion to

dismiss.  More specifically:

- The motion to dismiss the minimum wage claim is granted in part and denied in
  part.  Where there are deficiencies, Plaintiffs have leave to amend.
- The motion to dismiss the overtime claim is granted in part and denied in part.
  Where there are deficiencies, Plaintiffs have leave to amend.
- The motion to dismiss the breach-of-contract claim is granted with prejudice.
- The motion to dismiss the fraud claims is granted with prejudice.
- The motion to dismiss the PAGA claim is dismissed with prejudice as to Mr. Grant
  and Ms. Williams.  The motion to dismiss the PAGA claim is dismissed without
  prejudice as to Ms. Barajas.  Ms. Barajas may seek leave to amend as necessary

United States District Court
Northern District of California

(*e.g.*, once administrative exhaustion is complete).

- The motion to dismiss the § 2751 claim or a PAGA claim based on § 2751 is granted with prejudice.

- The motion to dismiss the § 203/201 claim is granted in part and denied in part. The § 203/201 claim rises or falls with the minimum wage and overtime claims. Plaintiffs have leave to amend consistent with amendment of the minimum wage and overtime claims.

- The motion to dismiss the § 17200 claim is granted in part and denied in part. The § 17200 claim rises or falls with the claims addressed above. Plaintiffs have leave to amend consistent with amendment of the claims above. The Court shall not permit any nonstitutionary relief.

Plaintiffs shall file their third amended complaint by January 6, 2020. CSI shall thereafter have January 27, 2020 to file a response. If a third amended complaint is not filed by the date specified above, then CSI shall file an answer to the second amended complaint (to the extent claims have survived) by January 27, 2020.

This order disposes of Docket No. 49.

**IT IS SO ORDERED**.

Dated: December 9, 2019

_____
EDWARD M. CHEN
United States District Judge